## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| CONSUMERS' RESEARCH, and BY TWO LP, <br><br>       *Plaintiffs,* <br>   *v.* <br><br> CONSUMER PRODUCT SAFETY COMMISSION, <br><br>       *Defendant.* | Civil Action No. _____ <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Consumers' Research and By Two LP, by and through their undersigned attorneys, allege:

## INTRODUCTION

1.      This case challenges the structure of the Consumer Product Safety Commission, an independent executive agency that is not accountable to the President as the Constitution requires.

2.      Article II of the Constitution vests in the President all executive power, which includes the power to appoint, supervise, and remove federal officers who exercise executive power.

3.      The Commission's structure violates Article II because the President can remove Commissioners only "for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a).

4.      Nearly a century ago, the Supreme Court upheld a similar removal restriction in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), relying on

the premise that the officer there did not exercise any executive power, *id.* at 624-30. More recently, the Court has reserved judgment on whether that premise of *Humphrey's Executor* was "[r]ight[] or wrong[]," but has made clear that for-cause removal restrictions violate the separation of powers as applied to officers who do wield executive power. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192, 2198–2200, 2206 (2020); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1783–84 (2021); *Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010).

5.    The Consumer Product Safety Commission served as the model for the Consumer Financial Protection Bureau ("CFPB"), whose for-cause removal restriction the Supreme Court struck down in *Seila Law*. Like the CFPB, the Commission exercises substantial executive power because it has the power not only to issue binding rules and conduct adjudicative hearings, but also to enforce its rules through lawsuits seeking money damages, equitable relief, and criminal penalties.

6.    This Court should declare that the Commission's structure violates the separation of powers, and that the Commission's actions challenged here are thus null and void as a matter of law.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the U.S. Constitution, the Administrative Procedure Act ("APA"), and the Freedom of Information Act ("FOIA"). *See* U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 3; 5 U.S.C. §§ 701–706; 5 U.S.C. § 552(a)(4)(B).

8.     This Court has the authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, APA, FOIA, and this Court's inherent equitable powers.  *See* 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 701–706; 5 U.S.C. § 552(a)(4)(B).

9.     Venue is proper in this district because a Plaintiff resides in this district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district.  28 U.S.C. § 1391(e)(1)(B), (C); 5 U.S.C. § 552(a)(4)(B).

## PARTIES

10.     Consumers' Research is an independent educational 501(c)(3) nonprofit organization whose mission is to increase the knowledge and understanding of issues, policies, products, and services of concern to consumers and to promote the freedom to act on that knowledge and understanding.  Consumers' Research regularly submits FOIA requests and requests fee waivers as part of its work and intends to continue sending FOIA requests regarding consumer issues in the future. Consumers' Research has submitted more than 25 FOIA requests to the Commission and will submit additional FOIA requests and requests for fee waivers to the Commission in the future.  Through FOIA requests, Consumers' Research uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of the federal government.  Consumers' Research has its principal place of business in Washington, D.C.

11.     By Two LP is a limited partnership focused on educational consulting with its principal place of business in Denton, Texas, located within this judicial district.  Its limited partners (both of whom are domiciled in Denton, Texas) are parents of young children who use and play with products regulated by the Commission.  As parents, they have an interest in ensuring that the products used by their children do not pose unreasonable risks of injury.  By Two LP has submitted more than 50 FOIA requests to the Commission and will submit additional FOIA requests and requests for fee waivers to the Commission in the future.

12.     The Consumer Product Safety Commission is an independent executive agency of the United States.  The Commission has possession, custody, and control of the records that Plaintiffs seek.

## BACKGROUND

### I.    Independent Agencies

13.     The constitutionality of independent executive agencies—which are "independent" of the President because their officers cannot be removed at will— has been a subject of controversy for nearly a century.  "The removal power helps the President maintain a degree of control over the subordinates he needs to carry out his duties as the head of the Executive Branch, and it works to ensure that these subordinates serve the people effectively and in accordance with the policies that the people presumably elected the President to promote."  *Collins*, 141 S. Ct. at 1784.  "In addition, because the President, unlike agency officials, is elected, this

control is essential to subject Executive Branch actions to a degree of electoral accountability." *Id.*

14.    In *Myers v. United States*, 272 U.S. 52 (1926), the Supreme Court invalidated a removal restriction on an executive officer as a violation of the President's Article II power to oversee the executive branch.  The Court explained that Article II gives the President "the general administrative control of those executing the laws," which includes the "power of removing those for whom he cannot continue to be responsible." *Id.* at 117, 164.

15.    Yet just nine years later, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court upheld a statute that prohibited the removal of FTC Commissioners except for "inefficiency, neglect of duty, or malfeasance in office," *id.* at 619–20 (quoting 15 U.S.C. § 41).  In an attempt to harmonize that result with *Myers*, the Court relied on the premise that FTC Commissioners at the time exercised only quasi-legislative and quasi-judicial authority, and did not exercise any "executive power in the constitutional sense." *Id.* at 628.

16.    In *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), the Court invalidated a for-cause removal restriction on members of the Public Company Accounting Oversight Board.  The officers in question could be removed only for cause by officers of the Securities and Exchange Commission, who in turn could be removed only for cause by the President.  The Court held that this removal restriction "subvert[ed] the President's ability to ensure that the laws are faithfully

executed" and was thus "incompatible with the Constitution's separation of powers." *Id.* at 498.

17.     In *Seila Law*, the Supreme Court addressed the constitutional structure of the CFPB, "an independent agency modeled after the multimember Consumer Product Safety Commission." *Seila Law*, 140 S. Ct. at 2192.  The statute at issue prohibited the President from removing the CFPB Director except for "inefficiency, neglect of duty, or malfeasance in office."  12 U.S.C. § 5491(c)(3).  The Court held that this provision violated Article II because it prevented the President from exercising control over an officer who undisputedly wielded substantial executive power.  The Court reaffirmed the general principle that the President must be free to remove executive officers at will, with only "two exceptions—one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 140 S. Ct. at 2199–2200.  President Biden removed the CFPB's Director on January 20, 2021.

18.     Most recently, in *Collins v. Yellen*, the Supreme Court applied *Seila Law* to strike down a statutory restriction on the President's power to remove the Director of the Federal Housing Finance Agency ("FHFA"). *See Collins*, 141 S. Ct. at 1783–84.  On the same day that the Supreme Court issued *Collins*, President Biden removed the FHFA's Director.

## II.    The Consumer Product Safety Commission

19.    Congress established the Consumer Product Safety Commission in 1972 as "[a]n independent regulatory commission," 15 U.S.C. § 2053(a), "to protect the public against unreasonable risks of injury associated with consumer products;" "assist consumers in evaluating the comparative safety of consumer products;" "develop uniform safety standards for consumer products and to minimize conflicting State and local regulations;" and "promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries," 15 U.S.C. § 2051(b).

20.    The Commission is a multimember body consisting of "five Commissioners who shall be appointed by the President, by and with the advice and consent of the Senate." 15 U.S.C. § 2053(a). "The Chairman shall be appointed by the President, by and with the advice and consent of the Senate, from among the members of the Commission." *Id.* Each Commissioner is a principal officer who is appointed to a seven-year term. *Id.* § 2053(b).

21.    Congress enacted a statute that prohibits the President from removing Commissioners at will: "Any member of the Commission may be removed by the President for neglect of duty or malfeasance in office but for no other cause." 15 U.S.C. § 2053(a).

22.    The Commission exercises broad executive power. It has rulemaking powers that authorize it to promulgate consumer-product safety standards that are "necessary to prevent or reduce an unreasonable risk of injury" from certain

products.  15 U.S.C. §§ 2056, 2058.  In addition, the Commission has the power to issue rules banning hazardous products and substances, 15 U.S.C. §§ 1057, 1262(f); to issue rules for infant and toddler products and children's toys, 15 U.S.C. §§ 2056a, 2056b; to issue rules requiring manufacturers of consumer products to provide performance and technical data related to performance and safety, 15 U.S.C. § 2076(e); to issue rules governing the flammability of fabrics, 15 U.S.C. § 1193; and to issue rules governing the maintenance of records relating to fabrics, 15 U.S.C. § 1194(c).

23.    The Commission also has power to enforce the law through all the traditional powers of a prosecutor, including by investigating violations and seeking civil and criminal penalties as well as injunctive relief.  For example, the Commission is authorized to investigate any factory or establishment to ensure that regulated products comply with mandatory safety rules, recalls and other corrective actions, and any other aspects of the statute.  15 U.S.C. §§ 2065(a), 1194(d).  The Commission also has the power to issue subpoenas and the power to enforce subpoenas through litigation.  15 U.S.C. § 2076(b)(1), (3), (c); 15 U.S.C. § 1193(c).

24.    To punish violations, the Commission may seek civil penalties up to $100,000 for each violation (up to $15 million total), 15 U.S.C. § 2069(a), and may also bring criminal prosecutions seeking up to five years' imprisonment, 15 U.S.C. §§ 2070(a), 2076(b)(7).  In addition, the Commission is authorized to seek "[i]njunctive enforcement and seizure" to restrain "any violation of" the act or to restrain "any person from distributing in commerce a product which does not

comply with a consumer product safety rule."  15 U.S.C. § 2071(a); 15 U.S.C. § 2069 (civil penalties); 15 U.S.C. § 2061 (authorizing Commission to seek relief in district courts to prevent imminent hazards); 15 U.S.C. § 1195 (injunction and condemnation proceedings).  The Commission may prosecute civil and even criminal actions with or through the Attorney General.  15 U.S.C. § 2076(b)(7); 15 U.S.C. § 2068 (prohibited acts); 15 U.S.C. § 2070 (criminal penalties).

25.    The Commission also exercises adjudicatory power because it can "conduct any hearing or other inquiry necessary or appropriate to its functions anywhere in the United States."  15 U.S.C. § 2076(a).  For example, the Commission can designate a product a substantial product hazard and order mandatory corrective action through administrative proceedings.  15 U.S.C. § 2064(c)–(d), (f).

## III.    The Commission's FOIA Rule

26.    The Commission also exercises executive power when it adopts binding rules implementing FOIA and responds to requests for information under FOIA.  *See* 16 C.F.R. §§ 1015.1–1015.12.

27.    FOIA gives any person the right to request access to records from any federal agency, including the Commission.  Federal agencies must disclose any information requested under FOIA unless it falls under an exemption.  *See* 5 U.S.C. § 552.  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

9

28.    "FOIA is often explained as a means for citizens to know what their Government is up to.  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy.  The statement confirms that, as a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve.  The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester.  As a general rule, if the information is subject to disclosure, it belongs to all." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (citation and internal quotation marks omitted); *see also U.S. Dep't of Justice v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 771 (1989) (explaining that "the identity of the requesting party has no bearing on the merits of his or her FOIA request" because "Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document]'").

29.    FOIA requires agencies to promulgate regulations "specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced."  5 U.S.C. § 552(a)(4)(A)(i).  Although FOIA permits agencies to charge certain fees for responding to requests, *id.* § 552(a)(4)(A)(ii), agencies must release records at no charge if the public interest would be served by their release.

10

"Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

30.     The Commission has promulgated a binding rule establishing "the procedures by which Consumer Product Safety Commission records may be made available for inspection and the procedures for obtaining copies of records from the Consumer Product Safety Commission." 16 C.F.R. § 1015.1(a); *see also id.* §§ 1015.3–7. For example, Section 1015.9 establishes the fees that the Commission will charge for producing records in response to FOIA requests.

31.     On January 29, 2021, the Commission issued a final rule setting the fees for the duplication, search, and review of documents under FOIA. 86 Fed. Reg. 7499 (Jan. 29, 2021). The rule contains a detailed fee schedule for FOIA requests. 16 C.F.R. § 1015.9(e). For example, the rule increases duplication fees from $0.10 per page to $0.15 per page for manual photocopies and computer printouts. *Id.* § 1015.9(e)(1), (e)(2), (e)(3). The rule became effective on March 1, 2021. 86 Fed. Reg. at 7499.

32.     The new rule also amends the regulation governing public-interest fee waivers. Under the rule, "[t]he Chief FOIA Officer, or the designee of the Chief FOIA Officer, shall waive or reduce fees whenever disclosure of the requested information is in the public interest because it is likely to contribute significantly to

11

public understanding of the operations or activities of the Government, and disclosure of the requested information is not primarily in the commercial interest of the requester."  16 C.F.R. § 1015.9(g)(2)(iv).  The rule provides several extra-statutory factors for the Commission to consider in determining whether to grant a fee waiver:

"(A) The subject of the request: Whether the subject of the requested records concerns the operations or activities of the Government.

"(B) The informative value of the information to be disclosed: Whether the disclosure is likely to contribute to an understanding of Government operations or activities.

"(C) The contribution to an understanding of the subject by the general public likely to result from disclosure: Whether disclosure of the requested information will contribute to public understanding.

"(D) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute significantly to public understanding of Government operations or activities.

"(E) The existence and magnitude of a commercial interest: Whether the requester has a commercial interest that would be furthered by the requested disclosure; and, if so

"(F) The primary interest in disclosure: Whether the magnitude of the identified commercial interest of the requester is sufficiently large, in comparison

with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester." *Id.* § 1015.9(g)(2)(v).

33.     The FOIA rule requires the Commission to respond to a FOIA request within 20 working days.  16 C.F.R. § 1015.5(a).  A FOIA requester may appeal a denial in whole or in part within 90 calendar days.  *Id.* § 1015.7(a).  "Any adverse determination . . . concerning a dispute over actual or estimated fees can be appealed by the requester[.]"  *Id.* § 1015.9(f)(6).

34.     The Commission has delegated authority over FOIA appeals to its General Counsel.  16 C.F.R. § 1015.7(d); *see also id.* § 1051.1(d); 15 U.S.C. § 2076(b)(10).  The "decision on appeal . . . constitute[s] final agency action."  *Id.* § 1015.7(e).

## IV.   Consumers' Research's FOIA Request

35.     On March 23, 2021, Consumers' Research submitted a FOIA request to the Commission seeking several voluntary safety standards and asking for a fee waiver:

> ASTM F3005 – 14a, Standard Specification for Batteries for Use in Small Unmanned Aircraft Systems (sUAS), https://www.astm.org/Standards/F3005.htm;
>
> ASTM F3235 – 17a, Standard Specification for Aircraft Storage Batteries, https://www.astm.org/Standards/F3235.htm;
>
> ASTM F3353 – 19, Standard Guide for Shipboard Use of Lithium-Ion (Li-ion) Batteries, https://www.astm.org/Standards/F3353.htm;
>
> ASTM Packaging and Shipping Container Standards, https://www.astm.org/BOOKSTORE/COMPS/PACKSHIPCMP.h

tm;

ASTM D6198 – 18, Standard Guide for Transport Packaging Design, https://www.astm.org/Standards/D6198.htm;

ASTM F2970 – 20, Standard Practice for Design, Manufacture, Installation, Operation, Maintenance, Inspection and Major Modification of Trampoline Courts, https://www.astm.org/Standards/F2970.htm;

ASTM F2225 – 15(2020), Standard Safety Specification for Consumer Trampoline Enclosures, https://www.astm.org/Standards/F2225.htm.

36.    The Commission assigned tracking number 21-F-00330 to this FOIA request.  On April 12, the FOIA officer denied this request by explaining that to obtain "copies of ASTM voluntary standards, please contact ASTM directly, which holds the exclusive rights of copyright in the standards. The CPSC webpage page at www.cpsc.gov/Regulations-Laws--Standards/Voluntary-Standards includes links for more information on specific voluntary standards organizations, including ASTM, where standards can be purchased or may be available for viewing in the organization's on-line Reading Room (https://www.astm.org/READINGLIBRARY/)." Each of these voluntary safety standards can be purchased for $46 to $195 from ASTM.  The Commission did not make a decision on the request for a fee waiver. Because the Commission denied this FOIA request, Consumers' Research must pay ASTM to obtain these documents.

37.    On May 28, 2021, Consumers' Research appealed the denial of its FOIA request, arguing that the Commission's structure violates Article II of the Constitution, that the Commission's FOIA rule was promulgated by an

unconstitutionally structured agency, and that the actions taken by the Commission in connection with the FOIA request were unlawful.

## V.     By Two LP's FOIA Requests

38.     In March 2021, By Two LP submitted FOIA requests seeking records from the Commission related to infant cribs, inclined sleepers, and other children's products.  By Two LP requested that the Commission deliver the records to its principal place of business in Denton, Texas.  By Two LP also requested that the Commission waive all fees associated with its requests.

39.     On March 1, 2021, By Two LP requested: "All records related to Bassettbaby Drop-Side Cribs."  The Commission assigned tracking number 21-F-00277 to this FOIA request.  On April 16, 2021, the FOIA officer denied By Two LP's request for a fee waiver.  On April 19, 2021, the FOIA officer responded that the Commission had located "twenty-two Epidemiologic reports, one hundred and fifty Consumer Incident reports and three Product Safety Assessment Reports potentially responsive to your request that are available electronically."  Because the Commission denied the request for a fee waiver, By Two LP will be required to pay the fees set forth in the Commission's FOIA rule to obtain these records from the Commission.

40.     On March 1, 2021, By Two LP requested: "All records related to Angel Line Longwood Forest Drop-Side Cribs."  The Commission assigned tracking number 21-F-00278 to this FOIA request. On April 8, 2021, the FOIA officer responded that the Commission had located "nine Epidemiologic reports and fifteen

Consumer Incident reports responsive to your request." On April 15, 2021, the

FOIA officer denied By Two LP's request for a fee waiver to process this request.

Because the Commission denied the request for a fee waiver, By Two LP will be

required to pay the fees set forth in the Commission's FOIA rule to obtain these

records from the Commission.

41.     On March 22, 2021, By Two LP requested several voluntary safety

standards:

> ASTM F963 – 17, Standard Consumer Safety Specification for
> Toy Safety, https://www.astm.org/Standards/F963.htm;
>
> ASTM F2167 – 19, Standard Consumer Safety Specification for
> Infant Bouncer Seats,
> https://www.astm.org/Standards/F2167.htm;
>
> ASTM F3118 – 17a, Standard Consumer Safety Specification for
> Infant Inclined Sleep Products,
> https://www.astm.org/Standards/F3118.htm;
>
> ASTM F2088 – 21 , Standard Consumer Safety Specification for
> Infant and Cradle Swings,
> https://www.astm.org/Standards/F2088.htm;
>
> ASTM F977 – 18, Standard Consumer Safety Specification for
> Infant Walkers, https://www.astm.org/Standards/F977.htm;
>
> ASTM F2167 – 19, Standard Consumer Safety Specification for
> Infant Bouncer Seats,
> https://www.astm.org/Standards/F2167.htm;
>
> ASTM F2236 – 16a, Standard Consumer Safety Specification for
> Soft Infant and Toddler Carriers,
> https://www.astm.org/Standards/F2236.htm;
>
> ASTM F833 – 19, Standard Consumer Safety Performance
> Specification for Carriages and Strollers,
> https://www.astm.org/Standards/F833.htm;

> ASTM F1625 – 00(2018), Standard Specification and Test Method for Rear-Mounted Bicycle Child Carriers, https://www.astm.org/Standards/F1625.htm;
>
> ASTM F404 – 20, Standard Consumer Safety Specification for High Chairs, https://www.astm.org/Standards/F404.htm;
>
> ASTM F406 – 19, Standard Consumer Safety Specification for Non-Full-Size Baby Cribs/Play Yards, https://www.astm.org/Standards/F406.htm.

42.    The Commission assigned tracking number 21-F-00324 to this FOIA request.  On April 7, 2021, the FOIA officer denied this request by explaining that to "obtain the requested voluntary standards, you will need to contact the voluntary safety standard organization directly, which holds exclusive rights of copyright in the standards. CPSC's webpage page at www.cpsc.gov/Regulations-Laws--Standards/Voluntary-Standards includes links for information on ASTM, where standards can be purchased or may be available for viewing in the organization's on-line Reading Room (https://www.astm.org/READINGLIBRARY/)."  Each of these voluntary safety standards can be purchased for $52 to $95 from ASTM.  The Commission did not make a decision on the request for a fee waiver.  Because the Commission denied this FOIA request, By Two LP must pay ASTM to obtain these documents.

43.    On May 28, 2021, By Two LP appealed the denial of its FOIA requests and fee waivers, arguing that the Commission's structure violates Article II of the Constitution, that the Commission's FOIA rule was promulgated by an unconstitutionally structured agency, and that the actions taken by the Commission in connection with the FOIA requests were unlawful.

## VI.   The Commission's Denial of the Administrative Appeals

44.   On June 29, 2021, the Commission's general counsel denied By Two LP's and Consumers' Research's administrative appeals.  By Two LP and Consumers' Research have thus exhausted all of their administrative remedies and are entitled to judicial review.

45.   The general counsel determined that the Commission's structure is constitutional, explaining that "[l]ong-standing Supreme Court precedent holds that for-cause removal limitations on executive branch officials are constitutional when those officials hold quasi-legislative powers, as members of multi-member commissions such as the U.S. Consumer Product Safety Commission ('Commission') do. In *Humphreys Executor v. United States*, the Supreme Court held that a restriction on the President's ability to remove a Federal Trade Commission Commissioner except for 'inefficiency, neglect of duty, or malfeasance in office' as provided in the Federal Trade Commission Act was constitutional. 295 U.S. 602, 632 (1935). Likewise, the Consumer Product Safety Act's (CPSA) limitation on removal except for neglect of duty or malfeasance in office is also constitutional, and the Commission's structure is constitutional. *See Collins v. Yellen*, No. 19-422, slip op. at 32 n.21 (S. Ct. June 23, 2021)."

46.   The general counsel went on to explain that the "Commission's promulgation of FOIA regulations is also constitutional" because it "properly promulgated its updated FOIA regulations through notice and comment rulemaking procedures."  "Therefore, I am denying your appeal that the Commission's structure

18

or its FOIA regulations are unconstitutional.  I also am denying your appeal that the Commission's actions in responding to your FOIA requests were unlawful as a result."

47.     With respect to By Two LP's FOIA Requests #21-F-00277 and #21-F-00278, the general counsel did not reverse the FOIA officer's denial of By Two LP's requests for fee waivers.  Although the general counsel instructed the FOIA officer to complete processing documents responsive to Request #21-F-00277, the Commission is withholding other documents—including dozens of Epidemiologic reports and hundreds of Consumer Incident reports—responsive to Requests #21-F-00277 and #21-F-00278 that By Two LP must pay for to obtain from the Commission.

48.     With respect to Consumers' Research's Request #21-F-00330 seeking ASTM voluntary safety standards, the general counsel instructed the FOIA officer to search for responsive documents, but the general counsel did not reverse the FOIA officer's determination that Consumers' Research must "contact ASTM directly for copies of ASTM voluntary standards because ASTM 'holds the exclusive rights of copyright in the standards.'"  Therefore, the Commission will not provide the voluntary safety standards to Consumers' Research because the Commission has already determined that Consumers' Research must purchase these documents from ASTM.

49.     Similarly with respect to By Two LLP's FOIA Request #21-F-00324 seeking ASTM voluntary safety standards, the general counsel instructed the FOIA

officer to search for responsive documents "that are not publicly available," but the general counsel did not reverse the FOIA officer's determination that Consumers' Research must "contact the voluntary safety standard organization directly, which holds exclusive rights of copyright in the standards."  The general counsel also determined that the appeal is "moot" "[t]o the extent staff granted your requests by directing you to publicly available responsive documents," but By Two LP's request is not moot because the Commission has refused to provide the voluntary safety standards to By Two LP.  The Commission will not provide the voluntary safety standards to Consumers' Research because the Commission has already determined that By Two LP must purchase these documents from ASTM.

## STANDING

50.    Plaintiffs have standing because (a) they are suffering injuries in fact; (b) that are fairly traceable to the actions taken by the unconstitutionally structured Commission; and (c) the Court can redress Plaintiffs' injuries by declaring the Commission's structure unconstitutional, striking the Commissioners' removal protection, setting aside the FOIA rule adopted by the unconstitutionally structured Commission, setting aside the Commission's denial of Plaintiffs' FOIA requests, and ordering the Commission to process Plaintiffs' FOIA requests without enforcing the FOIA rule adopted by the unconstitutionally structured Commission.

51.    Plaintiffs are suffering informational injury because the Commission has not provided Plaintiffs with the records they have requested, and to which they are entitled under FOIA.  "[A] plaintiff suffers an 'injury in fact' when the plaintiff

fails to obtain information which must be publicly disclosed pursuant to a statute." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 429–30 (5th Cir. 2013) (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)).  Indeed, an "agency's failure to provide information to which the Requesters are statutorily entitled is a quintessential form of concrete and particularized injury within the meaning of Article III" because "informational injuries satisfy the injury-in-fact requirement." *Maloney v. Murphy*, 984 F.3d 50, 59 (D.C. Cir. 2020); *see also Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617–18 (D.C. Cir. 2006) ("Anyone whose request for specific information has been denied has standing to bring an action .... The requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive.").  "As the Supreme Court recently indicated, the existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing generally 'need not allege any *additional* harm beyond the one Congress has identified.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  Plaintiffs complied with FOIA and the Commission's regulations by submitting proper FOIA requests, but the Commission has deprived Plaintiffs of information that FOIA requires the Commission to disclose in response to their FOIA requests.  Plaintiffs are suffering, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure in FOIA.

52.     Plaintiffs also face imminent financial injury because they must spend money to obtain the documents they requested from the Commission—and to obtain the documents they will request in the future.  *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) ("[E]conomic injury is a quintessential injury upon which to base standing.").  The Commission's rule increases duplication fees from $0.10 per page to $0.15 per page.  16 C.F.R. § 1015.9(e)(1), (e)(2), (e)(3).  Under the Commission's FOIA rule, Plaintiffs must "commit in writing to pay the actual or estimated total fee" before the Commission will provide documents in response to their FOIA requests, *id.* § 1015.9(f)(5), and Plaintiffs must pay the fees in advance if the fees will exceed $250, *id.* § 1015.9(i)(2).  Because the Commission denied By Two LP's requests for fee waivers, By Two LP must pay the fees set forth in the higher fee schedule adopted by the Commission in the new FOIA rule.  In addition, Plaintiffs each must spend up to $195 to purchase the ASTM voluntary safety standards that the Commission refused to disclose in response to Plaintiffs' FOIA requests.  These financial injuries are sufficient to bring separation-of-powers claims to unconstitutionally structured agencies.  *Collins*, 141 S. Ct. at 1779 (stating that "the shareholders claim that the FHFA transferred the value of their property rights in Fannie Mae and Freddie Mac to Treasury, and that sort of pocketbook injury is a prototypical form of injury in fact"); *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015)  (Kavanaugh, J.) (financial injury from a CFPB rule imposing "disclosure requirements on institutions that offer international remittance transfers").

53.     Plaintiffs' injuries are traceable to the unlawful actions taken by the Commission, which is responsible for promulgating the FOIA rule increasing duplication fees, withholding information to which Plaintiffs are entitled, and requiring Plaintiffs to spend money to obtain those documents.  *See Collins*, 141 S. Ct. at 1779 (holding that the "shareholders' injury is traceable to the FHFA's adoption and implementation of the third amendment").  The Commission's promulgation of the FOIA rule and the denial of Plaintiffs' FOIA requests and fee waivers were unlawful actions taken by an executive agency that is unconstitutionally structured in violation of Article II.  "[A] litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority.  In the specific context of the President's removal power, [the Supreme Court has] found it sufficient that the challenger 'sustain[s] injury' from an executive act that allegedly exceeds the official's authority."  *Seila Law*, 140 S. Ct. at 2196 (citing *Free Enter. Fund*, 561 U.S. at 512 n.12); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)).

54.     This Court can redress Plaintiffs' injuries by: (a) declaring that the Commission's structure violates the separation of powers; (b) striking the Commissioners' removal protection from the statute; (c) setting aside the FOIA rule adopted by the unconstitutionally structured Commission; (d) setting aside the Commission's denial of Plaintiffs' FOIA requests, including fee waivers; and (e)

23

ordering the Commission to process Plaintiffs' FOIA requests without any unconstitutional removal restriction in place, and without enforcing the FOIA rule adopted by the unconstitutionally structured Commission. *See Collins*, 141 S. Ct. at 1779 (holding that "a decision in the shareholders' favor could easily lead to the award of at least some of the relief that the shareholders seek"); *Seila Law*, 140 S. Ct. at 2192 (declaring "that the structure of the CFPB violates the separation of powers"), *id.* at 2196 ("[W]hen such a provision violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court."); *Free Enter. Fund*, 561 U.S. at 513 (holding that plaintiffs "are entitled to declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive").

55.    The fact that Plaintiffs' challenge to the Commission's constitutional structure does not arise in the criminal or civil enforcement context is immaterial. *See, e.g.*, *Collins*, 141 S. Ct. at 1775 (considering constitutional structure of the FHFA in the context of a challenge to agency action); *Free Enter. Fund*, 561 U.S. at 489–91 (considering the constitutional structure of the Public Company Accounting Oversight Board in a pre-enforcement suit); *State Nat'l Bank of Big Spring*, 795 F.3d at 54 (considering the constitutional structure of the Consumer Financial Protection Bureau in a pre-enforcement suit).

## CLAIMS FOR RELIEF

### Count I—Violation of the Separation of Powers
### The Commission's Structure Violates Article II of the U.S. Constitution

56.     Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

57.     The Supreme Court's "precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power while insulated from removal by the President." *Seila Law*, 140 S. Ct. at 2196.  "So whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins*, 141 S. Ct. at 1780.  Plaintiffs' cause of action is "an implied private right of action directly under the Constitution to challenge governmental action under … separation-of-powers principles." *Free Enter. Fund*, 561 U.S. at 491 n.2.

58.     The Commission's structure violates the separation of powers because Commissioners are principal officers who exercise substantial executive power without supervision, and they are removable by the President only "for neglect of duty or malfeasance in office but for no other cause."  15 U.S.C. § 2053(a).

59.     Article II of the Constitution provides that "[t]he executive Power shall be vested in [the] President," U.S. Const. art. II, § 1, cl. 1, and that he shall "take Care that the Laws be faithfully executed," *id.* art. II, § 3.  "The entire 'executive Power' belongs to the President alone." *Seila Law*, 140 S. Ct. at 2197.  "In our constitutional system, the executive power belongs to the President, and that power generally includes the ability to supervise and remove the agents who wield

executive power in his stead." *Id.* at 2211.  "[T]he nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head" because "[t]he President's removal power serves vital purposes even when the officer subject to removal is not the head of one of the largest and most powerful agencies." *Collins*, 141 S. Ct. at 1784.

60.     Unlike FTC Commissioners at the time of *Humphrey's Executor*, who (the Court believed) exercised "no part of the executive power," 295 U.S. at 628, the Commission wields substantial executive power.  This includes the power to promulgate binding rules; to enforce the law through criminal prosecutions and civil lawsuits seeking monetary penalties, equitable relief, and even imprisonment; and to hold adjudicatory hearings.

61.     Because the President can remove Commissioners only "for neglect of duty or malfeasance in office but for no other cause," the Court should declare that Commission's structure violates the separation of powers under *Seila Law*, *Collins*, *Free Enterprise Fund*, and *Myers*.  To the extent *Humphrey's Executor* compels a different result, it should be overruled.

62.     Because the Commission was unconstitutionally structured at the time it promulgated the FOIA rule, that rule is null and void and should not have been used as a basis to process or deny Plaintiffs' FOIA requests and fee waivers.  If the Commissioners had not been protected from removal, President Biden almost certainly would have removed the Commissioners without cause in the same way that he replaced the heads of other Executive Branch agencies without cause upon

taking office on January 20, 2021.  Indeed, President Biden removed the CFPB's Director on January 20, 2021, and the FHFA's Director on the same day that the Supreme Court held that he could remove him without cause—demonstrating that the President almost certainly would have also removed the Commissioners if he were not constrained by the statutory restriction on removal.  If the Commissioners had been removed, the Commission could not have adopted the FOIA rule on January 29, 2021, because Commission would have lacked a quorum.  *See* 15 U.S.C. § 2053(d).  Similarly, if President Trump had removed the Commissioners during his term in office, the Commission would have lacked a quorum to issue a notice of proposed rulemaking for the FOIA rule on April 16, 2020.

63.    The Commission's decisions to deny Plaintiffs' FOIA requests and fee waivers are null and void because the Commission was unconstitutionally structured at the time the decisions were made, and because the Commission used the FOIA rule adopted by the unconstitutionally structured Commission as a basis to process and deny Plaintiffs' FOIA requests and fee waivers.  If the Commission had not adopted the FOIA rule, then (a) Commission could not have used that rule as a basis to process or deny Plaintiffs' FOIA requests and fee waivers; (b) the Commission could not have required By Two LP to pay the higher fee in the new FOIA rule; (c) the Commission could not have used the standard in the FOIA rule as a basis to deny By Two LP's request for a fee waiver; and (d) By Two LP would have been entitled to a fee waiver under FOIA.

27

### Count II—Violation of the Administrative Procedure Act
### The Commission's FOIA Rule Is Contrary to Constitutional Right,
### Power, Privilege, or Immunity

64.     Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

65.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702. Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  The APA provides that a court "shall[] … hold unlawful and set aside agency action … found to be[] … contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

66.     The Commission's FOIA rule is final agency action for which there is no other adequate remedy in a court.  The Commission's FOIA rule is the consummation of the Commission's decisionmaking process regarding the implementation of FOIA.  The Commission's FOIA rule affects Plaintiffs' rights and imposes legal consequences because it restricts Plaintiffs' ability to obtain records from the Commission, requires Plaintiffs to pay money to obtain documents that they have requested from the Commission, and makes it harder for Plaintiffs to obtain a fee waiver.  Plaintiffs have no other statutory remedy to challenge the Commission's FOIA rule as contrary to constitutional right, power, privilege, or immunity.

67.     The Commission's FOIA rule is contrary to constitutional right, power, privilege, or immunity and must be set aside because it was promulgated by an unconstitutionally structured agency.

### Count III—Violation of the Freedom of Information Act
### The Commission is Enforcing an Unconstitutional FOIA Rule and Unlawfully Withholding Records Without Political Accountability

68.     Plaintiffs incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

69.     FOIA authorizes a court "to enjoin [a federal] agency from withholding agency records [or] to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  This provision "vests courts with broad equitable authority" because "Congress did not intend that language 'to limit the inherent powers of an equity court' in FOIA cases." *CREW v. U.S. Dep't of Justice*, 846 F.3d 1235, 1241–42 (D.C. Cir. 2017).  Courts have "wide latitude … to fashion remedies under FOIA," including the power to "order relief beyond the simple release of extant records." *Id.* at 1242; *see, e.g., Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (awarding declaratory relief in FOIA case because "FOIA imposes no limits on courts' equitable powers in enforcing its terms").  Courts can award equitable relief when reviewing the validity of an agency's FOIA rules—just like a court reviewing an agency's rule under the APA.  *CREW*, 846 F.3d at 1242; *see, e.g., Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 88 (D.C. Cir. 1986) (considering challenge to an "allegedly illegal regulation governing [agency's] treatment of FOIA fee waiver requests").

29

70.    The Commission is an agency subject to and within the meaning of FOIA.

71.    Plaintiffs properly requested records within the possession, custody, and control of the Commission.

72.    Plaintiffs exhausted all of their administrative remedies under FOIA and the Commission's regulations.

73.    The Commission is wrongfully withholding agency records to which Plaintiffs are entitled by relying upon and enforcing an invalid FOIA rule promulgated by an unconstitutionally structured agency.  In particular, the Commission required By Two LP to pay fees in the fee schedule in its FOIA rule and required By Two LP to satisfy the extra-statutory fee waiver standard in that rule.  16 C.F.R. § 1015.9(e), (g)(2)(iv).

74.    The Commission wrongfully denied By Two LP's requests for fee waivers because disclosure of the information is in the public interest under FOIA. The information requested is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of By Two LP.

75.    The Commission is wrongfully withholding agency records to which Plaintiffs are entitled by requiring Plaintiffs to purchase records from a third party.

76.    The Commission's decisions to deny Plaintiffs' FOIA requests are also invalid because these decisions were made by an unconstitutionally structured agency.

30

77. The Court should strike the removal restrictions, set aside the Commission's decisions to deny Plaintiffs' FOIA requests, and remand for the agency to reconsider the FOIA requests once the agency is properly structured and accountable to the President as required by Article II.

78. The Court should set aside the Commission's FOIA rule because it was adopted by an unconstitutionally structured agency, and order the Commission to process Plaintiff's FOIA requests without enforcing or relying upon the invalid FOIA rule.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

1. A declaration that the Commission's structure violates Article II of the Constitution;

2. An order striking the removal restrictions in 15 U.S.C. § 2053(a);

3. An order setting aside the Commission's FOIA rule because it was adopted by an unconstitutionally structured agency;

4. An order setting aside the Commission's denial of Plaintiffs' FOIA requests, including the denial of fee waivers;

5. An order compelling the Commission to process Plaintiffs' FOIA requests, including their requests for fee waivers, without enforcing or relying upon the FOIA rule adopted by an unconstitutionally structured agency;

6. An order remanding for the Commission to reconsider Plaintiffs' FOIA requests, including their requests for fee waivers, once the agency is properly structured and accountable to the President in accordance with Article II;

7. An award of all costs and attorneys' fees pursuant to any applicable statute or authority; and

8. Any other relief this Court deems just and proper.

Dated: July 2, 2021 Respectfully submitted,

/s/ Brett A. Shumate

Brett A. Shumate (D.C. Bar No. 974673)
    *Lead Attorney*
John M. Gore* (D.C. Bar No. 502057)
Anthony J. Dick* (D.C. Bar No. 1015585)
Megan Lacy Owen* (D.C. Bar No. 1007688)
J. Benjamin Aguiñaga* (D.C. Bar No. 1708051)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
bshumate@jonesday.com
jmgore@jonesday.com
ajdick@jonesday.com
mlacyowen@jonesday.com
jbaguinaga@jonesday.com

*application for admission pro hac vice
forthcoming

*Counsel for Plaintiffs*